**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**RAMONA GOMEZ and
LINCOLN MOREL,**

    **Plaintiffs,**

**v.**                                                                  **Case No. 8:13-cv-2988-T-30AEP**

**AMERICAN SECURITY INSURANCE
COMPANY,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiffs' Motion to Remand (Dkt. 12) and Defendant's Response in Opposition (Dkt. 13). The Court, having reviewed the motion, response, and being otherwise advised in the premises, concludes that the motion should be denied.

## BACKGROUND

On or about July 11, 2013, Plaintiffs Ramona Gomez and Lincoln Morel filed this lawsuit against Defendant American Security Insurance Company in the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida, for breach of an insurance policy. Specifically, Plaintiffs claim that their home sustained damages as a result of sinkhole activity. Plaintiffs' complaint alleges damages in excess of $15,000. The complaint does not include any additional information regarding Plaintiffs' damages.

Plaintiffs filed suit after Defendant denied the reported sinkhole claim.  Defendant based its denial of the claim on a report prepared by Terracon Consultants, Inc. (the "Terracon Report").  Terracon eliminated sinkhole activity as a cause of loss at the subject property within a reasonable professional probability.

After Defendant denied Plaintiffs' claim, and prior to Plaintiffs filing their complaint, Plaintiffs did not provide Defendant with any report or demand regarding their damages.

On July 24, 2013, Defendant was served with the complaint.  On August 13, 2013, Defendant invoked neutral evaluation pursuant to Florida law and the state court stayed the action pending the completion of the neutral evaluation.  On October 22, 2013, the neutral evaluation began, and on October 25, 2013, the neutral evaluator provided Defendant with a copy of a Peer Review from JFK & Associates, Inc. (the "JFK Report") that Plaintiffs' counsel had provided to the neutral evaluator, but had not previously provided to Defendant.

The JFK Report confirms sinkhole activity at the subject property and recommends subsurface repairs to the subject property.  The JFK Report does not include an estimate of the costs for the subsurface repairs.

Defendant subsequently requested Central Florida Testing Laboratories ("CFTL"), a geotechnical engineering firm that specializes in sinkhole investigations, to review the specifications set forth in the JFK Report and estimate the cost for the proposed subsurface repairs. CFTL estimated the costs of the subsurface repairs recommended in the JFK Report in the range between $72,400 and $80,900.  This estimate does not include cosmetic damages.

On November 25, 2013, Defendant removed the state-court action to this Court on the basis of diversity jurisdiction. Defendant's notice of removal relies upon the JFK Report that Defendant received on October 25, 2013, as an "other paper" that establishes the amount in controversy. Defendant's notice of removal also includes the Declaration of George Sinn, an engineer at CFTL. Sinn's Declaration states the estimated subsurface repair costs in the range between $72,400 and $80,900, and notes that this estimate does not include costs associated with cosmetic damages.

The notice of removal also states that Plaintiffs are citizens of the State of Florida and Defendant is a Delaware corporation with its principal place of business located in Atlanta, Georgia.

Plaintiffs now move to remand this action. Plaintiffs argue that the removal was untimely because it was clear on the face of the complaint and the "Terracon Report" that Plaintiffs' damages exceeded $75,000. In the alternative, Plaintiffs argue that the JFK Report and the Declarations attached to Defendant's notice of removal do not establish the amount in controversy. Finally, Plaintiffs argue that Defendant has not established complete diversity.

As discussed below, the Court concludes that Defendant's removal was timely. The Court also concludes that Defendant has established complete diversity.

## **DISCUSSION**

### **I.  Legal Standard**

Where the alleged basis for federal jurisdiction is diversity under 28 U.S.C. § 1332, as it is in this case, the removing defendant has the burden of demonstrating that there is (1)

complete diversity of citizenship and (2) an amount-in-controversy greater than $75,000. *See* 28 U.S.C. § 1332(a).[1] When, as here, damages are not specified in the state-court complaint, the defendant seeking removal must prove by a preponderance of the evidence that "the amount in controversy more likely than not exceeds ... the jurisdictional requirement." *Roe v. Michelin N. Am., Inc.,* 613 F.3d 1058, 1061 (11th Cir. 2010) (citation omitted). A removing defendant is not required "to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 754 (11th Cir. 2010).

Notably, when a defendant removes under the second paragraph of 28 U.S.C. § 1446(b) (now found at 28 U.S.C. § 1446(b)(3)), which is what Defendant did in this case, *Lowery* applies to establish the defendant's burden. *See Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007). Since *Pretka*, the Eleventh Circuit has repeatedly and clearly applied this distinction in the removal standards based upon the timing of the removal. *See Bender v. Mazda Motor Corp.*, 657 F.3d 1200, 1204 n.2 (11th Cir. 2011); *Roe*, 613 F.3d at 1061 nn.3-4. In *Lowery,* the court held that "in the removal context where damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." *Id.* at 1208.

To obtain federal jurisdiction pursuant to 28 U.S.C. § 1332, a removing party must also prove by a preponderance of the evidence that complete diversity exists between the plaintiff and the defendant. Under 28 U.S.C. § 1332(c)(1), a corporation's citizenship is

---

[1] The Court will discuss Plaintiffs' arguments in favor of remand in the order that they appear in Plaintiffs' motion. Accordingly, the issue of complete diversity will be discussed last.

determined by (1) its state of incorporation and (2) the state where it has its principal place of business.

In early 2010, the Supreme Court abrogated the Eleventh Circuit precedent concerning the standard to determine a corporation's principal place of business for purposes of diversity jurisdiction under 28 U.S.C. § 1332. *See Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192 (2010). In *Hertz*, the Court adopted the "nerve center" test which refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* The nerve center is normally the headquarters, "provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.* Usually, the headquarters is a single place that the public considers the corporation's main place of business. *Id.* at 1193.

The burden of persuasion still remains on the party asserting diversity jurisdiction. *Id.* at 1194. "When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Id.* at 1194-95.

## II.     Removal Based on the Complaint

Applying the guidelines set forth in *Roe* and *Pretka* that govern removals filed within thirty days of service, the Court concludes that Defendant could not have removed this case based on Plaintiffs' complaint. The complaint alleges that the damages are "in excess of $15,000." (Dkt. 2). This, standing alone, is insufficient to establish the jurisdictional amount. The allegations of the complaint also do not specify Plaintiffs' damages in any detail to be able to quantify the jurisdictional amount. For example, the complaint alleges

that the subject home experienced "sinkhole activity" but the extent or scope of the damages is unclear. *Id.*

Plaintiffs did attach the subject insurance policy to the complaint and said policy reflects a policy limit in the amount of $127,000. The limit, standing alone, however, does not establish the amount in controversy by a preponderance of the evidence because Plaintiffs' complaint does not include an allegation that Plaintiffs seek damages up to the policy limit. In other words, in the absence of an allegation tying Plaintiffs' damages to the policy limit, it is entirely unclear whether the damages will be more or less than the limit.

The Terracon Report is also insufficient to establish the amount in controversy because it eliminated sinkhole activity and did not describe significant damages to the subject property. Indeed, the Terracon Report observed damage that was "negligible" and "minor." (Dkt. 12-1). Thus, nothing in the Terracon Report could serve to establish the amount of Plaintiffs' damages for sinkhole loss.

In sum, the complaint is insufficient to establish the jurisdictional amount even under *Roe* and *Pretka's* more liberal standard. Accordingly, Plaintiffs' argument that Defendant should have removed the case based on the complaint fails.

### III.   Removal Based on the JFK Report

Defendant removed the case within thirty days of receiving the JFK Report. The Court agrees with Defendant that the JFK Report was the first document upon which Defendant could reasonably ascertain that Plaintiffs' damages exceeded $75,000. Contrary to the Terracon Report that eliminated sinkhole activity and discussed negligible and minor

damage, the JFK Report proposed a subsurface remediation program for remediating the alleged sinkhole activity at the subject property.

Although the JFK Report did not include a damage estimate, the JFK Report contained sufficiently detailed specifications that allowed Defendant's retained engineering firm to prepare a cost estimate of the subsurface repairs. As set forth above, that estimate is between $72,400 and $80,900. And if the Court were to assume that the lowest estimate of $72,400 applies, it is reasonable to assume that including even a very modest number for Plaintiffs' damages associated with cosmetic damages to the subject property and Plaintiffs' attorney's fees results in a total amount in controversy that exceeds $75,000. Accordingly, Defendant's removal based on the JFK Report was appropriate and timely.

**IV.    Complete Diversity**

Plaintiffs' argument regarding complete diversity is without merit. As stated above, Defendant's notice of removal states that Defendant is a Delaware corporation and its principal place of business is in Georgia. Also, Defendant's response to Plaintiffs' motion to remand applies the *Hertz* nerve center test and attaches the Declaration of Jeannie Aragon-Cruz to establish the relevant factors. According to Aragon-Cruz, Defendant's corporate headquarters are located in Atlanta, Georgia and, except for the Vice Chairman, whose office is in California, all of Defendant's directors are located in Georgia. Defendant's Board of Directors meet and make primarily all of Defendant's corporate decisions at Defendant's headquarters in Georgia. Also, Defendant's high level officers direct, control, and coordinate Defendant's activities predominantly from the Georgia headquarters.

Accordingly, Defendant has presented competent proof that its principal place of business for purposes of diversity jurisdiction is located in Georgia.

It is therefore **ORDERED AND ADJUDGED** that Plaintiffs' Motion to Remand (Dkt. 12) is denied.

**DONE** and **ORDERED** in Tampa, Florida on February 28, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2013\13-cv-2988.denymtremand.wpd